J. W. Sparkman and Margaret Bell Sparkman v. commissioner
Sparkman v. Commissioner
Docket No. 2813-71.
United States Tax Court
T.C. Memo 1972-201; 1972 Tax Ct. Memo LEXIS 54; 31 T.C.M. (CCH) 1008; T.C.M. (RIA) 72201; September 19, 1972, Filed Tried in Dallas, Texas. *54 Yale B. Griffis, 816 Mercantile Bank Bldg., Dallas, Texas, for the petitioners. John W. Dierker, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the taxable years 1967, 1968, and 1969 in the following amounts: Year
Amount
1967
$ 826.57
1968
4,401.20
1969
3,855.44
The issue for decision is whether the proceeds received during the years here in issue from the sale of sand and gravel 1009 mined from land sold by petitioners subject to a 5-year right reserved in petitioners to mine the land constitute ordinary income subject to a depletion allowance or capital gain from the sale of the land. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners J. W. Sparkman and Margaret Bell Sparkman are husband and wife who resided at McKinney, Texas at the time of filing the petition in this case. They filed joint Federal income tax returns for the years 1967, 1968, and 1969 with the district director of internal revenue at Dallas, Texas. J. W. Sparkman has been in the sand and gravel business for *55 over 20 years. As of 1965, he and his wife, petitioner Margaret Bell Sparkman, were and had, for some years, been the owners in fee simple of a 12.5 acre parcel of land in Dallas, Texas. In 1965 the city of Dallas brought proceedings to condemn this land for expansion of a city park, and on February 15, 1965, the Special Commissioners in Condemnation for Dallas County, Texas awarded petitioners the sum of $40,000 for this 12.5 acre parcel of land in Dallas. Because of the sand and gravel content of the 12.5 acre parcel owned by petitioners, this parcel of land had a value in 1965 of $100,000. Petitioners had not, as of February 1965, begun mining operations for sand and gravel on the 12.5 acre parcel. Petitioners filed, on March 4, 1965, their Objections and Exceptions to the $40,000 award of the Commissioners and effected an appeal to the CountyCourt of Dallas County, Texas. While this appeal was pending, petitioners settled their case with theCity of Dallas. On May 21, 1965, petitioners and the City of Dallas entered into a contract which provided that petitioners vould sell, and the City would buy, the 12.5 acre parcel "subject to the exceptions and reservations and upon the *56 terms and conditions" stated in the contract. The terms and conditions stated in the contract included the following: Owners [petitioners] except and reserve unto themselves, their heirs, and assigns, the privilege of mining the hereinabove described land for sand, gravel, loam and/or other saleable fill materials, * * * * * * This reservation and exception to be effective for a period of five (5) years ONLY beginning immediately upon the execution and delivery of the deed of conveyance to the City. The contract stated that the agreement was conditioned upon the right and license of the owners, their heirs and assigns for a 5-year period to mine the land, being established through the issuance of a certificate of occupancy and that the sale should not be closed until the condition was fulfilled. The contract provided for payment to petitioners at the time the sale was closed of $30,000 "as the purchase price of said land" and for the delivery by petitioners to the City of a general warranty deed. The sale was closed in August 1965, and petitioners gave to the City a general warranty deed dated August 9, 1965. This deed recited that for the sum of $30,000 petitioners "have *57 Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey," unto the City of Dallas the 12.5 acres. The deed contained the statement that "Owners except and reserve unto themselves, their heirs, and assigns, the exclusive privilege of mining" the land for sand, gravel, loam and other saleable fill materials. The deed provided that the "reservation and exception" were effective for a period of 5 years beginning immediately upon execution and delivery of the deed to the City. Petitioners began mining operations on the 12.5 acres in 1967. The amounts which petitioners received for sand and gravel mined by them on the 12.5 acre parcel during the years 1967, 1968, and 1969 were as follows. [1]
Year
Amount
1967
$ 4,724.59
1968
22,980.69
1969
15,626.36
Petitioners on their Federal income tax return for each of the years in issue reported amounts received from the sale of sand and gravel as long-term capital gain with the explanation, *58 "real estate proceeds of sale of gravel in place." Respondent in his notice of deficiency determined that these amounts reported as long-term capital gain were taxable as ordinary income subject to a 5 percent depletion allowance. 1010 Opinion Petitioners contend that since they were forced to sell the 12.5 acres of land, the transaction should be viewed as a "sale of the full title that taxpayers had in the land" with the right to mine the sand and gravel considered as part of the purchase price of the land. In their brief petitioners state,"If this was a mere lease the funds derived would, in our opinion, result in Ordinary Income." Petitioners rely primarily on the case of (C.A. 5, 1957), reversing . The fact situation in the Crowell Land and MineralCorporation case as stated by the Fifth Circuit was as follows: The contract of sale provided that Crowell [taxpayer] as vendor, for the expressed consideration and on the terms enumerated, sold and conveyed unto Gifford-Hill, vendee, with full warranty of title, all sand and gravel underlying certain described property. *59 Consideration was fifteen cents per cubic yard for all sand and gravel removed, payable $1200 upon execution of the instrument and $1200 at the beginning of each year the contract was in effect as advance payment, with Gifford-Hill having the privilege of removing without payment an amount of sand and gravel at fifteen cents per cubic yard equivalent to the advance cumulative payment. * * * On these facts the Fifth Circuit concluded that: Neither the method of payment, based upon the amount of the deposit removed at specified intervals during the five year period the vendor had in which to effect removal, nor the provisions for reverter and retransfer can be regarded as indicia of or analogous to a mineral lease so as to permit the payments made by the vendee under the sale contract to be regarded and treated as payments of royalty rather than, as they were intended to be and were, installment payments on the price. It is readily apparent that the facts in the instant case are different from those in the Crowell case. [2] Here, petitioners retained an interest in the land they sold which gave them the right to mine the land for a period of 5 years and the income they derived *60 in the years here in issue was from the sale of the sand and gravel produced from this mining operation. Petitioners did not "sell" or even "let" to another the sand and gravel in place. Therefore there is no basis on the facts of this case for holding that the amounts received by petitioners during the years here in issue constituted capital gain from the "sale" of sand and gravel in place. Their income was from the extraction and sale of the extracted sand and gravel. It is clear from the contract of sale between petitioners and the City of Dallas as well as from the deed that petitioners retained an economic interest in the sand and gravel in place which interest they had acquired when they acquired the 12.5 acres of land and that their income in the years here in issue was from the extraction of this sand and gravel. It follows that petitioners' income from the sale of the sand and gravel is ordinary income subject to a depletion deduction. , and (C.A. 5, 1967).
*61 1011 We decide the only issue presented for our decision for respondent. However, since there may have been some adjustments agreed to by the parties in the amount of income petitioners received from sand and gravel sales in the years here in issue, Decision will be entered under Rule 50. Footnotes
1. These amounts are stipulated. They do not correspond to the amounts reported by petitioners on their income tax returns for the years in issue but in each year represent 95 percent of the amounts reported.↩
2. It should also be noted that in (C.A. 5, 1957), affirming in part , the United States Court of Appeals for the Fifth Circuit held that a royalty received by the lessor taxpayer was ordinary income subject to depletion and distinguished (C.A. 5, 1957), on the basis of the facts with particular reference to the wording used in the agreement. In (C.A. 5, 1967), the Court followed the Albritton case and in footnote 26 at page 311 stated: 26. If indeed the method of determining royalties was the sole basis for the refusal of the court in Albritton to follow Crowell, we conclude that such distinction is not supported by a reasonable reading of the Supreme Court decisions. We feel, however, that this difference in the method of royalty computation was not the distinguishing factor in the two decisions. As far as can be discerned from a reading of the opinions, the wording of the respective contracts was the primary factor causing the different results. Clearly then, Crowell would have no application in the present case, while Albritton would clearly be in point. We must state, however, that if the two cases were decided differently solely because of the wording of the agreements, we do not view such distinction as properly determinative of tax consequences under the economic interest test. See e.g., , 2 L. Rf. 3f 743, 748-749; . See also . It would therefore appear doubtful whether the Fifth Circuit would follow the Crowell case in a situation where the facts were identical.↩